DOROTHY MCCURDY BRILL and STANDARD ACCIDENT INSURANCE COMPANY, a corporation of the State of Michigan,

Appellants,

*vs.*

CLARENCE A. SOUTHERLAND, Receiver of Consolidated Chemical Corporation, JOSEPH C. PAUL, Ancillary Receiver of said Consolidated Chemical Corporation, and JOHN R. HARDIN, WILLIAM L. MORGAN, CORWIN HOWELL, J. FREDERIC WHERRY, WALDRON M. WARD, CARL A. FEICK, SHELTON PITNEY, CHARLES R. HARDIN, JOHN R. HARDIN, JR., MAHLON PITNEY, FREDERICK FRELINGHUYSEN, WILLIAM J. BRENNAN, JR., and DONALD B. KIPP, a co-partnership practicing under the firm name of Pitney, Hardin & Skinner and Consolidated Chemical Corporation, a corporation organized and existing under the laws of the State of Delaware,

Appellees.

*Supreme Court, On Appeal, June 18, 1940.*

LAYTON, C. J., and RICHARDS, RODNEY, SPEAKMAN, and TERRY, J.J., sitting.

*Warren R. Schenck,* of New Brunswick, N. J., for appellants.

*David F. Anderson,* (Southerland, Berl, Potter & Leahy, of counsel), for appellees.

LAYTON, Chief Justice, delivering the opinion of the court:

The appellants offer numerous reasons why the decree of the court below should be reversed, none of them having substantial merit.

It is urged that no determination can be made by this court without notice to August Stickel, co-complainant;

that the order of the Federal Court in New Jersey fixing allowances to the ancillary receiver and counsel was futile as an *ex parte* order; that the bond given by the appellants was a cost bond only and did not embrace allowances and fees to the receivers and counsel; that the suit, being a class suit, cost allowances cannot be decreed against the complainants alone; that the decision of the New Jersey court denying allowances to the receiver and counsel was *res judicata;* that no litigation took place in Delaware, no burden of responsibility was on the receiver and no burden of advice or services of any consequence rested upon counsel in this State, wherefore allowances should be on that basis; that the burden of costs is on the trust estate; that the litigation in New Jersey should not have been barren, and, in fact, was not barren; that the receiver and his counsel should seek payment for the allowances in the West Virginia court by filing claims in bankruptcy; and that the surety on the bond was discharged by the failure of the receiver to present his claims to the West Virginia court. These contentions will be answered briefly.

While the record does not disclose the fact, it is stated in the brief of counsel for the appellants that the co-complainant, August Stickel, is dead. The argument is that no notice of the application for allowances was, or could have been, given to the co-complainant, and no decree can be entered against one of the co-complainants, and certainly not against the deceased without having his personal representative brought into court.

The condition imposed by the order appointing a receiver was that the complainants, or either of them, should execute and file a cost bond with surety in the sum of $3,000, for the purpose of prosecuting the complaint. The appellants, the one as principal, the other as surety, voluntarily obligated themselves to pay the costs and expenses of the receivership. Why the co-complainant did not join in the obligation, and whatever right the appellant, Brill, may have against her co-complainant, or his estate, is not

a matter for inquiry or decision. The obligation assumed by the appellants was individual, in conformity with the order, and, within its proper limitations, is binding on them.

It may be conceded that the order made by the New Jersey court fixing the amount of allowances to the receiver and his counsel, was entered *ex parte,* and had no binding force or effect. At the most the order was advisory only. The Chancellor was not concluded by it. As was proper, the receiver petitioned the court below for the allowances. The appellants were brought into court by rule properly issued and served. The decree complained of was made by the court below, not by the New Jersey court; and the fact that the allowances were in amounts as were deemed just by the New Jersey court is without importance.

The bond was denominated as a cost bond, but it is entirely clear that it was not merely a bond to secure the payment of those statutory costs of the Register in Chancery as are provided by *Section* 5352 of the *Code.* The order of the Chancellor and the amount of the bond preclude the idea. The language of the condition of the bond itself is descriptive of the extent of the obligation. It was that the obligors should comply with all of the orders of the Court of Chancery relating to the payment of the costs of the cause and the cost and expense of the temporary and permanent receiverships, if the receivership should be made permanent. Authorities defining the word "costs" as that word is usually understood in law are without point. We are not called upon to decide whether the bond is to be construed according to the intention of the order of the court that directed its execution. See *Sonneborn v. Libbey,* 102 N. Y. 539, 7 N. E. 813. The language of the condition of the bond is sufficiently clear and comprehensive without the necessity of recourse to construction. The word "expense" signifies not only an actual expenditure, outlay or disbursement of money, but also the obligation therefor; and included in the broad significance of the word are reasonable charges and incurrences that are necessary for

the proper functioning of the receivership. Ordinarily, a receiver is entitled to compensation for authorized services performed by him, measured by the reasonable value thereof. An allowance made to a receiver is an expense of the receivership. Likewise, the claim of the receiver's counsel for such compensation as is properly due him ranks as a part of the expense of the receivership. 53 *C. J.* 261. The record discloses that the counsel to whom the allowance was made was employed by the receiver, and served under his direction under an authorization of the court below.

The purpose of an ancillary receivership is to assist in carrying out the purpose of the court at the place of domicile. *Conklin v. United States Shipbuilding Co.*, (*C.C.*) 123 *F.* 913. The complainant, Brill, knew that the corporation was possessed of no assets in this State, and that the sole possibility of recovering assets, and thereby creating a fund from which the expense of the receivership could be paid, lay in obtaining intervention on behalf of the corporation in the suit pending against it in the Federal Court in New Jersey and defending it successfully. In the bill of complaint it was averred that a decree *pro confesso* had been entered against the corporation in that suit; and in her supporting affidavit, she stated that it was indispensable that a temporary receiver be appointed to take all steps deemed necessary to defend the New Jersey suit. The appointment of an ancillary receiver in New Jersey was an absolute prerequisite to any defense to that suit under the rules and practice of the Federal Court in New Jersey. The appointment of a receiver in this State was sought solely with the object and purpose of obtaining the appointment of an ancillary receiver in New Jersey so that the suit against the corporation in that State could be defended. It appears also that the ancillary receiver was appointed on the petition of the appellants; and the court stated that the appointment was "in aid" of the primary receiver. Upon the particular facts disclosed by the record the appellants are in no position to contend that the allowances ordered were not expenses of the receivership.

As a general rule a receiver's compensation and expenses are payable from the funds in his hands, and no part is taxable against the party at whose instance the receiver was appointed. 23 *R.C.L.* 106. Where there is no fund out of which expenses can be paid, or the fund is insufficient, the usual rule is that the party at whose instance the receiver was appointed should be required to provide the means of payment. *Clark on Receivers, 2d Ed., Vol. 1,* 890; *Beach, Receiver,* § 773; *Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 4,* 3879. Moreover, the court, generally speaking, has a large discretion in appointing receivers, and where the appointment is conditioned upon the complainant's giving a bond, there is no reason to doubt the obligor's liability thereon. *Farmers' National Bank v. Backus,* 74 *Minn.* 264, 77 *N.W.* 142; *Farmers L. & T. Co. v. Oregon Pac. R. Co.,* 31 *Or.* 237, 48 *P.* 706, 38 *L.R.A.* 424, 65 *Am. St. Rep.* 822. The fact that the instant suit was a class suit can make no difference. It is idle to suppose that one bringing a class suit can escape all liability for costs and expenses, even upon his specific contract, merely because the suit was of the type called a class suit, no other of the class being interested enough to join therein.

It appears from the record that, at the instance of the then Chancellor application was made to the New Jersey court for allowances to the receivers and counsel on the theory, as it may be supposed, that the services rendered were properly compensable out of assets under the control of that court. The effect of the decision of that court in the case of *Charnock, Trustee in Bankruptcy of Miner Edgar Chemical Corporation v. Consolidated Chemical Corporation, et al.,* was that the defendant corporation never had existence except as a paper entity for the purpose of stock manipulation; that the conveyances made to it by Miner Edgar Chemical Corporation were absolute nullities; and the result of the decision was that the defendant corporation was deprived of all the property and assets claimed by it. Consequently it was held that the expense incident to the receivership could not be paid out of property or assets of

Miner Edgar Chemical Corporation. In the course of the court's supplemental opinion it was said that the complainant, Brill, had not been shown to have acted in bad faith in prosecuting her demand for the appointment of a receiver for the defendant corporation, but that there were no circumstances that would entitle the receiver or his counsel to receive from the complainant payment for their expenses or services. It is obvious that by "complainant" the court referred to the trustee in bankruptcy for Miner Edgar Chemical Corporation, the complainant in the suit by which it was determined that the conveyances of property by Miner Edgar Chemical Corporation to the defendant corporation were nullities. It will not be seriously contended that the Federal Court in New Jersey assumed to adjudicate the liability of the complainants in the court below for costs and expenses of the receivership under the bond that was required of them. All that the New Jersey court decided was that the receiver and his counsel could not look to the assets of Miner Edgar Chemical Corporation for the payment of their expenses and services. The decision of that court was not *res judicata*.

The appellants made no objection to the amounts of the allowances when that matter was in hearing before the Chancellor. They now belittle the services rendered. It was the duty of the receiver to search for, collect and administer the assets of the defendant corporation committed to his charge. In entire good faith, and with the full knowledge and active assistance of the appellants, intervention was sought and allowed in the New Jersey suit. The proposition that a receiver and his counsel can be recompensed only for services performed in the territorial limits of the court making the appointment is startling. No authority is cited, and independent research has disclosed no authority for the proposition.

The litigation in New Jersey, prosecuted in good faith, was barren in its results. It is not a case of penalizing the complainants for having the enterprise to act for the

benefit of all of the class, as suggested in brief of counsel. The simple fact is that the complainants voluntarily and solemnly obligated themselves to pay the costs and expenses of the receivership.

In view of the decision of the New Jersey court in the matter of the payment of allowances and expenses from the property of Miner Edgar Chemical Corporation, it is entirely unreasonable to suppose that such claims would meet with any greater favor at the hands of the court in the State of West Virginia where that corporation was adjudicated a bankrupt. It appears from the brief of counsel for the appellants that the receiver refused to apply to the West Virginia court for compensation for himself and his counsel. In the circumstances his refusal was justified. The fact that counsel for the appellants requested him to make the application is of no significance, and does not affect the obligation of the surety on the bond.

The decree of the Chancellor is sustained.

---

Note. Through inadvertence the foregoing opinion was overlooked in preparation of previous Delaware Chancery Reports for publication.