Carl K. HAHN, Respondent,

v.

Corinne F. HAHN, Appellant.

No. 22243.

Kansas City Court of Appeals.
Missouri.

Jan. 9, 1956.

Motion for Rehearing or to Transfer
Denied Feb. 9, 1956.

See 287 S.W.2d 960.

S. Cedric Siegfried, Independence, Walter A. Raymond, Kansas City, for appellant.

David W. Barry, Eugene G. Wetzel, Meyer, Smith, Wetzel & Barry, Kansas City, for respondent.

BOUR, Commissioner.

Carl K. Hahn brought an action for partition of certain real estate in Jackson county, Missouri. Corinne F. Hahn, plaintiff's former wife, the trustee (Paul T. White) under a deed of trust on the real estate, dated June 9, 1938, the holder (Lindell Trust Company) of the note secured by said deed of trust, and the trustee (Edmond B. Smith) and beneficiary (Ray M. Klapmeyer) of a deed of trust on plaintiff's undivided interest in the same property, dated April 11, 1953, were named as defendants in plaintiff's amended petition. The cause was tried before the court without a jury. Defendant Corinne F. Hahn, alone, appealed to this court. She appealed from an adverse judgment on her cross action.

We will refer to the respondent as plaintiff and to the appellant as defendant.

■ Plaintiff and defendant were married in 1928. In June, 1938, they bought the above mentioned real estate from the Home Owners Loan Corporation, taking title as tenants by the entirety, and made a down payment of $385 out of their joint funds. On June 9, 1938, they executed and delivered to the seller their note for $3,465, the unpaid balance of the purchase price; and on the same day they executed and delivered to the seller a deed of trust on said real estate, naming Paul T. White as trustee, to secure the payment of their note. In 1952 defendant brought suit for divorce in the circuit court of Jackson county. On October 23, 1952, she was granted a divorce and awarded $2,000 alimony in gross, and $200 for attorneys' fees. At the time of the divorce the parties still owned the real estate in question, as tenants by the entirety, subject to the deed of trust described above. After the divorce, by operation of law, they were tenants in common, each owning an undivided one-half interest in the property, subject to the

lien of said deed of trust. Hiatt v. Hiatt, Mo.Sup., 168 S.W.2d 1087, 1089. In April, 1953, plaintiff borrowed $2,200, from Ray M. Klapmeyer and the money was used by plaintiff to pay the judgment for alimony and attorneys' fees heretofore mentioned. On April 11, 1953, plaintiff gave Klapmeyer his note for $2,200 and on the same day plaintiff executed and delivered to Klapmeyer a deed of trust on plaintiff's undivided interest in said real estate, to secure the payment of the note. Edmond B. Smith was named as trustee.

On April 13, 1953, plaintiff filed suit for partition of the real estate. The record shows that on November 7, 1953, defendant, Corinne F. Hahn, filed a separate "Amended Answer and Cross Action", and that plaintiff filed a reply to the amended cross action. Thereafter, on March 6, 1954, plaintiff filed his first amended petition. At the beginning of the trial, on July 15, 1954, and with leave of court, defendant refiled her first amended answer and cross action, and plaintiff refiled his reply. In view of the oral agreement made by counsel for the respective parties at the beginning of the trial, it is unnecessary to set forth the admissions and denials in defendant's first amended answer, which was refiled as an answer to the first amended petition. It may be stated, however, that the amended answer is very confusing when considered as an answer to the amended petition.

The case was tried on plaintiff's first amended petition, which alleged that plaintiff and defendant were in possession of the described property and the owners thereof as tenants in common, subject to the lien of a deed of trust dated June 9, 1938, securing a note in the principal amount of $3,465; that said note and deed of trust had been assigned and transferred to the Lindell Trust Company; that plaintiff's interest in the property was further encumbered by a deed of trust dated April 11, 1952, securing a note for $2,200; that the property (a house and lot) could not be partitioned in kind without great prejudice to the owners. Plaintiff prayed for the sale of the property and the division of

the proceeds "among all the parties hereto in proportion and according to their respective interests, and for such other orders, decrees and further relief as to the court may seem meet and just in the premises."

As appears below, on July 15, 1954, and during the course of the trial, defendant was granted leave to amend her answer and cross action, and the case was continued until September 8, 1954. On July 22, 1954, defendant filed her "Second Amended Answer and Cross Action". The second "amended answer" was identical with the first amended answer. It would seem that defendant's cross action was a counterclaim under Section 509.420 RSMo 1949, V.A. M.S. Cf. 42 V.A.M.S. Supreme Court Rules, rule 3.16. In her second amended cross action or counterclaim, defendant referred to the deed of trust dated June 9, 1938, securing the note for $3,465, and alleged that both before and after October 23, 1952, the date of the divorce, she made payments on said note to the holder thereof; that the total amount of such payments was $5,450, including interest; that all of these payments were made with her own funds; that "between 1939 and the time of said divorce" she "paid out of her own funds for improvements and repairs on said premises the sum of $175.59"; that since the divorce she had "paid out of her own funds the sum of $358.20" for improvements on the property; that "said payments were made by defendant at the request of plaintiff and upon his promise and agreement that he would reimburse her for such payments in cash or out of his interest in said premises; that defendant made said payments in reliance on said promise and understanding; that by reason thereof the defendant has acquired and does now have an equitable lien on said property * * *." Defendant further alleged that she had no adequate remedy at law. She prayed that the court "enter a decree finding said land cannot be partitioned, fixing a lien thereon in favor of defendant for the amount of moneys advanced by her in the sum of $5,983.79, ordering said land sold and said deed of trust satisfied, defendant's lien satisfied and the balance divided equally between plaintiff and defendant after the payment of the costs herein." (Italics ours.) The first amended cross action or counterclaim did not contain the italicized part.

In his amended reply, filed August 18, 1954, plaintiff denied each and every allegation in defendant's second amended cross action; alleged "that defendant has had the use and occupancy of and the rentals received from the real estate in question since the parties hereto were divorced and that any mortgage payments made by the defendant or any sums expended by the defendant for repairs or improvement of the real estate in question since the parties hereto were divorced do not exceed the rental of the premises or the rents collected by the defendant for which no accounting has been made to the plaintiff, and that the plaintiff is not indebted to the defendant for any such payments or for any sums so expended." Plaintiff reaffirmed the allegations in his amended petition and concluded with a prayer substantially the same as the prayer of his amended petition. The other pleadings in the case need not be noted.

The record further shows that at the beginning of the trial, on July 15, 1954, counsel for the respective parties orally agreed that plaintiff and defendant acquired the described property in June, 1938, taking title as tenants by the entirety, and that they were divorced on October 23, 1952; that the property could not be divided in kind and should be sold; that the Lindell Trust Company was the owner and holder of the note secured by the deed of trust dated June 9, 1938; that said deed of trust was a first lien on the property; that on August 9, 1954, the balance due on said note would be $870.72; that plaintiff's undivided interest in the property was further encumbered by the deed of trust dated April 11, 1953, securing the note for $2,200; and that the amount due on the last mentioned note was $2,200 plus $220 interest.

After counsel so agreed, in open court, the trial judge said: "I think with those

agreements there is a case made for the plaintiff, and it is a question of the cross action now." Thereupon defendant took the stand and testified at length in support of her cross action or counterclaim. She testified, inter alia, that she had paid out about $375 of her own money for improvements on the described property. This testimony was admitted over plaintiff's objection that it was "outside the scope of the pleadings". When defendant's Exhibit A was offered in evidence, plaintiff objected to its admission on the ground, among others, that it included "the item of $266.71 for improvements", and that defendant's pleading did not allege that she had expended money for improvements on the property. Defendant then requested leave to amend her cross action or counterclaim so as to cover such expenditures. The court announced that defendant would be granted leave to amend her pleadings, and that the cause would be continued until September 8, 1954.

On the same day, that is on July 15, 1954, the court rendered an interlocutory judgment in partition. The court found that the described real estate was not susceptible of division in kind and therefore ordered that the real estate be sold. The judgment named a special commissioner to make the sale, and it recited that "all parties waive the right to appeal from said order and judgment and consent that said property may be advertised and sold as expeditiously as possible." The court further stated in its judgment that "having heard part of the evidence on the issue of the right to distribution of the proceeds from the sale of said property, and it appearing that to develop the real issues it is necessary that the pleadings be amended and further evidence adduced which cannot be done at this time, it is ordered that this case be and the same is hereby continued and set for trial on September 8, 1954."

As heretofore stated, defendant filed her second amended answer and cross action on July 22, 1954; and on August 18, 1954, plaintiff filed his amended reply.

Thereafter, and on August 30, 1954, the court rendered another interlocutory judgment. It appears from the judgment that on August 23, 1954, the special commissioner filed his report of sale which showed that he sold the described real estate at public sale on August 16, 1954, to Charles A. Rinehart, for $14,325, and that Rinehart paid to said commissioner $1,000 to be applied thereon. The court found that all of the parties had agreed in writing that "the existing mortgage encumbrances upon the property, to-wit, that held by Lindell Trust Company and that held by Ray M. Klapmeyer, would be paid out of the proceeds of the sale"; that "in the order named the sums due upon said mortgages are first liens upon the proceeds of said sale"; that the special commissioner should pay Rinehart $56.84 as accrued taxes; that "certain costs and charges" set forth in the commissioner's report were proper and reasonable; that $650 would be a reasonable fee for services rendered by plaintiff's attorneys; that the special commissioner should be allowed $650 for his services; and that the amount required "to satisfy the mortgage encumbrance of Ray M. Klapmeyer is a proper charge against the distributive share herein of plaintiff, Carl K. Hahn, all as heretofore agreed to by said Hahn." The judgment recites that "counsel for the respective parties in open court consent to and concur in all of said findings".

The court, by its judgment, approved the sale and the special commissioner's report; directed the commissioner to execute a deed in proper form and to deliver the same to the purchaser upon payment of the balance due on the purchase price, $13,325, and from the proceeds of the sale to pay the purchaser "$56.84 as accrued taxes, and satisfy of record the aforesaid encumbrances, to-wit, that held by Lindell Trust Company upon which there is due the sum of $870.-72 plus interest * * *, and also that held by Ray M. Klapmeyer upon which there is due the sum of $2,200 plus interest * * *." The court further ordered that plaintiff's attorneys be allowed a fee of $650; that the special commissioner be

allowed $650 as compensation for his services; and that said commissioner pay such allowances and "all of the items of cost and expense heretofore recited totaling the sum of $179.23". The special commissioner was further ordered to pay "all court costs herein incurred or that shall be incurred in the consummation of this order", and to hold and retain, subject to the further order of the court, "all of the remainder of the proceeds of said sale".

The record recites that "on the 8th day of September, pursuant to adjournment heretofore taken, the hearing of the within cause was resumed * * *." When the trial was resumed counsel for defendant offered in evidence defendant's Exhibit A, which was admitted over plaintiff's objection. Thereupon counsel for plaintiff said: "I haven't cross-examined the defendant, your Honor. The Court: Very well, you may proceed." Defendant was cross-examined at length, and this was followed by redirect and recross-examinations. In view of the conclusion which we have reached in this case it is unnecessary to state all of defendant's evidence.

At the close of defendant's evidence, plaintiff moved the court "to enter judgment" in his favor on defendant's "cross action", assigning as grounds therefor (1) that "the defendant, Corinne F. Hahn, has failed to establish by her evidence that she has any claim against the plaintiff upon which relief can be granted"; (2) that the evidence of said defendant "establishes as a matter of law that she is not entitled to an equitable lien on the real estate mentioned in evidence"; and (3) that the evidence of said defendant "establishes as a matter of law that no resulting trust was created in her favor in the real estate mentioned in evidence".

On the same day, September 8, 1954, plaintiff's motion was sustained and the following judgment (omitting formal parts) was entered of record: "Therefore, it is ordered and adjudged by the court that defendant Corinne F. Hahn have and recover nothing on her cross petition, and that plaintiff recover of said defendant costs incurred in this behalf, and that execution issue therefor." On September 17, 1954, defendant gave notice of appeal "from the judgment entered in this action on the eighth (8th) day of September, 1954", and in this court she attacks that judgment on several grounds.

██ Although neither party has raised the question, it is the duty of this court to determine whether the appeal is premature. Bennett v. Wood, Mo.Sup., 239 S.W.2d 325, 328. The right of appeal is purely statutory, and where the statutes do not give such right, it does not exist. Tevis v. Foley, 325 Mo. 1050, 30 S.W.2d 68. Section 512.020 RSMo 1949, V.A.M.S., provides, so far as material, that any aggrieved party "may take his appeal * * * from any interlocutory judgments in actions of partition which determine the rights of the parties, or from any final judgment in the case * * *." Laws 1943, p. 390, Sec. 126.

██ "A judgment is the final determination of the right of the parties in the action." Section 511.020 RSMo 1949, V.A.M.S. Ordinarily a judgment must dispose of all parties and all issues in the case to be a final judgment for the purposes of appeal. Deeds v. Foster, Mo.Sup., 235 S.W.2d 262, 265; Shoush v. Truitt, Mo.App., 235 S.W.2d 859, 862. However, trial courts are authorized to order separate trials of any claim, cross-claim, counterclaim, third-party claim or any separate issue. Section 510.180, subd. 2 RSMo 1949, V.A.M.S. Supreme Court Rule 3.29 provides in part that when "a separate trial of any such claim is had before the court without a jury, the court may order a separate judgment entered which shall be deemed a final judgment for the purposes of appeal within the meaning of Section 126 or the court may enter a separate interlocutory judgment and order it held in abeyance until other claims, counterclaims or third party claims in the case are determined, in which event appeal shall not lie until a complete judgment disposing of all claims is entered."

██ In England v. Poehlman, 359 Mo. 369, 221 S.W.2d 742, 744, the court said:

"It is well settled that the final judgment in a partition suit, where a sale of the lands is had, is held to be the order whereby the sale is approved and the distribution of the proceeds provided for. Marsala v. Marsala, 288 Mo. 501, 232 S.W. 1048; Schee v. Schee, 319 Mo. 542, 4 S.W.2d 760; Biedenstein v. Feltz, Mo.App., 156 S.W.2d 29, 32." After discussing the cases cited, the court continued: "Thus it is clear that the reference in the cases to an order of distribution in defining a final judgment in a partition suit can only mean an order of final distribution, an order which distributes all the proceeds, because otherwise the order would not finally dispose of the case. On the other hand an order of partial distribution leaves part of the proceeds undistributed and retained by the court subject to its further order. Such an order is an interlocutory order entered on an intermediate motion made before final judgment. The very purpose of the motion contemplates the postponement of final judgment."

■ In the instant case it is obvious that the judgment of September 8, 1954, was not a final judgment within the meaning of Section 512.020, supra. England v. Poehlman, supra. Nor could the judgment be said to be an interlocutory judgment in an action in partition "which determines the rights of the parties". It was simply a judgment against defendant on her cross action or counterclaim. No order for a separate trial on defendant's cross action or counterclaim was made or requested, nor was there a separate trial on the merits thereof. We cannot hold, under the record in this case, that the judgment in question was a "final judgment for the purposes of appeal" within the provisions of Supreme Court Rule 3.29. It follows that the appeal in this case is premature.

■ It may be noted, incidentally, that the interlocutory judgment of August 30, 1954, was not an appealable interlocutory judgment, because it directed the special commissioner to hold and retain subject to the further order of the court, "all of the remainder of the proceeds of said sale". England v. Poehlman, supra.

For the reasons stated, the appeal should be dismissed, and the commissioner so recommends.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of BOUR, C., is adopted as the opinion of the court. The appeal is dismissed.

All concur.